**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LANCE TREANKLER, Individually and On Behalf of All Others Similarly Situated, | Case No.: 1:19-CV-00629 |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| FERROGLOBE PLC, PEDRO LARREA, and PHILLIP MURNANE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

479204.1

Plaintiff Lance Treankler ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Ferroglobe PLC ("Ferroglobe" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Ferroglobe; and (c) review of other publicly available information concerning Ferroglobe.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Ferroglobe securities between September 4, 2018 and November 26, 2018, both dates inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Ferroglobe purports to be one of the leading materials innovation companies in the world, producing silicon metal, silicon-based alloys, and manganese-based alloys, which are used as components in numerous industrial and consumer products in a variety of industries, including aluminum and steel manufacturing, silicone compounds manufacturing, the automotive industry, photovoltaic solar cells and computer chips, electronic semiconductors, and concrete and building materials.

3.      Throughout the Class Period, Defendants assured investors that the Company's market fundamentals, including supply, demand, and pricing factors were favorable, and that demand for Ferroglobe's products was, in fact, "accelerating" during the third quarter of 2018. As late as November 14, 2018, Defendants assured investors that "near-term" fundamentals in the Company's core silicon metals business, including supply, demand, and pricing, were stable.

4.      On November 26, 2018, the Company stunned the market by reporting a net loss of $2.9 million for the third quarter 2018, compared to a net profit of $66.0 million the prior quarter.  In the press release published by the Company announcing these results, Defendant

Larrea explained that "[f]ollowing strong growth in our business over several sequential quarters, market conditions in our main products deteriorated through Q3,…."

5.     On November 27, 2018, Defendants elaborated on the cause of the disappointing financial results during a conference call with analysts. Defendant Larrea admitted that "[t]he third quarter results were disappointing as the business was challenged with the confluence of softer flat prices and lighter volumes." He explained that "[t]he most significant driver of the Q3 results was reduced pricing, specifically average sales price for silicon metal declined 4.9% versus Q2 2018, while average sales price for silicon-based alloys and manganese-based alloys fell by 5.6% and 7.1%, respectively…. The net impact of weaker volumes and pricing during the quarter yields a 9.6% decline in our top line revenue." He also explained the cause of the disappointing results as "[t]he net impact of silicon production at high rates, the impact of customers stocking up in anticipation of the trade case and the availability of aluminum scrap are weighing on the pricing environment in North America."

6.     On this news, the Company's share price fell $2.97 per share, more than 62%, to close at $1.80 per share on November 27, 2018, on unusually high trading volume. Investors lost tens of millions of dollars.

7.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there was excess supply of the Company's products; (2) that demand for the Company's products was declining; (3) that, as a result, the pricing of the Company's products would be materially impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).   Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.   Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including interstate communications and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Lance Treankler, as set forth in his previously-filed certification (Dkt. No. 1), incorporated by reference herein, purchased Ferroglobe securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Ferroglobe is incorporated under the laws of England and Wales with its principal executive offices located in London, United Kingdom.   Ferroglobe's common stock trades on the NASDAQ exchange under the symbol "GSM."

15.     Defendant Pedro Larrea ("Larrea") was the Chief Executive Officer of the Company at all relevant times.

16.     Defendant Phillip Murnane ("Murnane") was the Chief Financial Officer of the Company at all relevant times.

17.     Defendants Larrea and Murnane, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the

contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   The Individual Defendants made or were provided with copies of the Company's presentations and other public statements alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.      Prior to the Class Period, in March 2017, Ferroglobe, through its U.S. subsidiary Globe Specialty Metals, brought a case before the U.S. Department of Commerce ("DOC") and the U.S. International Trade Commission ("ITC") to address what Ferroglobe claimed to be unfairly dumped and subsidized silicon metal imports from Australia, Brazil, Kazakhstan, and Norway (the "trade case").   A preliminary determination by the ITC in April 2017 allowed an investigation into these allegations to ensue.   On March 2, 2018, the Company announced that the DOC issued "affirmative antidumping determinations" and would impose new duty rates on imports from these countries, with the "last step in the case" to be the U.S. ITC's "final injury determination" in a vote scheduled for March 23, 2018.   However, on March 23, 2018, the ITC determined that the U.S. industry was *not* materially injured or threatened by silicon metal imports from Australia, Brazil, Kazakhstan, or Norway; as a result, no anti-dumping or countervailing duties would be issued against these imports and the ITC would terminate its investigations.   The decision was generally regarded as a loss for Ferroglobe, and analysts, including a March 26, 2018 J.P. Morgan analyst report, noted that lower U.S. silicon metal prices would be expected as a result.

FIRST AMENDED CLASS ACTION COMPLAINT

19.     On May 22, 2018, however, Jefferies reported that Ferroglobe reported financial results for 1Q 2018 that exceeded both Jefferies' forecast and Street consensus, noting that management was "upbeat regarding fundamentals" and that management cited "favorable supply-demand supportive of pricing."  The same day, J.P. Morgan noted that "[s]ilicon metal prices [were] holding in better than expected so far."  Also on May 22, 2018, Oppenheimer noted that "[m]anagement remains particularly bullish."

20.     As alleged herein, Defendants maintained their "upbeat" and "bullish" façade throughout the Class Period, misleading investors to believe that market fundamentals were positive, that Ferroglobe's "strong" performance was continuing throughout the third quarter of 2018, and that the Company had largely avoided the negative impacts that were initially predicted following the trade case outcome.

**Materially False and Misleading Statements Issued During the Class Period**

21.     The Class Period begins on September 4, 2018.  On that day in the final month of the Company's third fiscal quarter, Defendants participated in the Goldman Sachs Leveraged Finance Conference, during which Defendants led investors to believe that fundamental market factors underlying the Company's growth during the first half of the fiscal year remained in place at that time and, in fact, were then "accelerating" the demand for Ferroglobe's products. Defendants also misled investors to believe that the growth experienced in the first half of 2018 was continuing at that time late in the third quarter of 2018.

22.     For example, in the September 4, 2018 presentation, Defendant Larrea stated that "***market fundamentals are accelerating the demand for our products***," including silicon metals and silicon-based and manganese-based alloys. (Emphasis added.)

23.     In the same September 4, 2018 presentation, Defendant Murnane stated that the Company's second quarter performance "confirms the strong performance of Ferroglobe in 2018[,]" and he cited the quarterly trend in revenue and adjusted EBITDA along with a rising arrow to mislead investors to believe that the Company's supposedly "strong performance" was continuing in the third quarter:



24.     Ferroglobe's September 4, 2018 presentation was subsequently posted on the Company website.  It was also published by the website *Seeking Alpha* on September 5, 2018.

25.     The above statements identified in ¶¶21-23 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, by this point late in the third quarter, Defendants knew or should have known but failed to disclose to investors: (1) that there was excess supply of the Company's products; (2) that demand for the Company's products was actually declining; (3) that pricing of the Company's products was declining during the third quarter; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

26.     On September 12, 2018, Defendants participated in a non-deal roadshow hosted by Stifel, Nicolaus & Co. in New York City, and on September 13, 2018, Defendants participated in a similar event hosted by B. Riley FBR, Inc. in Boston, Massachusetts.  During these events, a presentation deck substantially similar to the September 4, 2018 presentation deck was again presented by Defendants Larrea and Murnane.

27.     In the September 12 and 13 presentations, within the "Ferroglobe Overview" section presented by Defendant Larrea, the statement that "[m]arket fundamentals" were at that time "accelerating the demand" for the Company's products, including silicon metals and silicon-based and manganese-based alloys, was repeated.

28.     Also during the September 12 and 13 presentations, Defendant Murnane again stated that Ferroglobe's Q2 performance "confirms the strong performance of Ferroglobe in 2018" and again misled investors to believe, based on the Company's previous quarterly revenue and adjusted EBITDA figures, that the supposedly strong performance was continuing throughout the third quarter, using the same slide as reproduced in ¶23, above.

29.     Ferroglobe's September 12, 2018 and September 13, 2018 presentations were subsequently posted on the Company's website.

30.     The above statements identified in ¶¶27-28 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, by this point near the end of the third quarter, Defendants knew or should have known but failed to disclose to investors: (1) that there was excess supply of the Company's products; (2) that demand for the Company's products was actually declining; (3) that pricing of the Company's products was declining during the third quarter; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

31.     On September 21, 2018, following Defendants' materially misleading statements and omissions made earlier in September that demand for Ferroglobe's products was "accelerating" and that the supposedly "strong performance of Ferroglobe in 2018" was "confirm[ed]" by the Company's performance in Q2 2018, coupled with the suggestion that this strong performance was continuing well into the third quarter of 2018, the Company's stock price closed at a Class Period high of $8.45 per share.

32.     On November 14, 2018, Defendants presented at the CRU Silicon Metal Conference.  In this presentation, while describing "[n]ear-term observations on the silicon metal

market" Defendants claimed that the "[t]rade case 'overhang'" including "corrections to supply, demand, and pricing" as a result of the negative trade case outcome had already "passed[.]" Defendants similarly stated that a "[c]atalyst for near-term pricing recovery" was the fact that the "[t]rade case impact has passed" and that there were "lower inventory stockpiles by end users[.]"

33.     Defendants also represented that "[a]luminum demand [was] expected to continue delivering steady growth for silicon metal[.]"

34.     Ferroglobe's November 14, 2018 presentation was subsequently posted on the Company website.

35.     The above statements identified in ¶¶32-33 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants knew or should have known but failed to disclose to investors: (1) that there was excess supply of the Company's products; (2) that demand for the Company's products was actually declining; (3) that pricing of the Company's products was declining during the third quarter; (4) that wide availability of aluminum scrap in North America was drawing down prices for Ferroglobe's products at that time, and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.  More specifically, Defendants intentionally or with extreme recklessness misled investors to believe that any "corrections to supply, demand, and pricing" as a result of the negative trade case outcome had already passed—*i.e.*, had already been experienced and absorbed by the Company and reflected in its financial performance—when, in fact, these impacts, or "overhang," from the trade case had *not* passed and indeed would materially and negatively impact the Company's impending Q3 financial report, a fact known by Defendants at this time, and which they would be forced to publicly admit when announcing Q3 financial results fewer than two weeks later.

### Disclosures at the End of the Class Period

36.     On November 26, 2018—fewer than two weeks after Defendants had represented that trade case "overhang" and related "corrections to supply, demand, and pricing" had already "passed"—the Company stunned the market by reporting poor financial results for the third

quarter 2018.  In the press release announcing the results, the Company reported a net loss of $2.9 million and adjusted EBITDA of $45.0 million, which was down 47.9% from the prior quarter adjusted EBITDA of $86.3 million.  Defendant Larrea attributed the poor performance to "market conditions in our main products [that] deteriorated through Q3."

37.   On November 27, 2018, Defendants Larrea and Murnane participated in a conference call to discuss the financial results with analysts.  Defendant Larrea admitted that "[t]he third quarter results were disappointing as the business was challenged with the confluence of softer flat prices and lighter volumes."  He explained that *"[t]he most significant driver of the Q3 results was reduced pricing*, specifically average sales price for silicon metal declined 4.9% versus Q2 2018, while average sales price for silicon-based alloys and manganese-based alloys fell by 5.6% and 7.1%, respectively….  *The net impact of weaker volumes and pricing during the quarter* yields a 9.6% decline in our top line revenue."  He also explained the cause of the disappointing results as "[t]he net impact of silicon production at high rates, the impact of customers stocking up in anticipation of the trade case and the availability of aluminum scrap are weighing on the pricing environment in North America."  Regarding the adjusted EBITDA, Defendant Larrea reiterated that "the biggest factor contributing to the decline this quarter has been pricing."  (Emphasis added.)

38.   On this news, the Company's share price fell $2.97 per share, more than 62%, to close at $1.80 per share on November 27, 2018, on unusually high trading volume.

<u>CLASS ACTION ALLEGATIONS</u>

39.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Ferroglobe securities between September 4, 2018 and November 26, 2018, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

40.   The members of the Class are so numerous that joinder of all members is

FIRST AMENDED CLASS ACTION COMPLAINT

impracticable. Throughout the Class Period, Ferroglobe's common shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Ferroglobe common stock shares were traded publicly during the Class Period on the NASDAQ. As of September 30, 2018, Ferroglobe had 171,935,000 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Ferroglobe or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

43.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Ferroglobe; and

(c)    whether Defendants knew or deliberately disregarded that their omissions and/or statements were false and misleading;

(d)    whether the price of Ferroglobe securities was artificially inflated because of Defendants' conduct complained of herein; and

(e)     to what extent the members of the Class have sustained damages and the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION

45.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ferroglobe's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed and the price of the Company's stock precipitously declined.

## ADDITIONAL SCIENTER ALLEGATIONS

46.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

47.     As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Ferroglobe, their control over, and/or receipt and/or modification of Ferroglobe's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ferroglobe, participated in the fraudulent scheme alleged herein.

48.     Ferroglobe is attributed with knowledge of facts and information possessed by its employees and agents acting in the scope of their authority, and the scienter of such employees and agents of Ferroglobe is properly imputed to the Company.

### APPLICABILITY OF THE FRAUD-ON-THE-MARKET AND *AFFILIATED UTE* PRESUMPTIONS OF RELIANCE

49.     The market for Ferroglobe's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Ferroglobe's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Ferroglobe's securities and market information relating to Ferroglobe, and have been damaged thereby.

50.     During the Class Period, the artificial inflation of Ferroglobe's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ferroglobe's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Ferroglobe and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

51.     At all relevant times, the market for Ferroglobe's securities was an efficient

market for the following reasons, among others:

(a)     Ferroglobe's shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Ferroglobe filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Ferroglobe regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Ferroglobe was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

(e)     The average daily trading volume for Ferroglobe securities during the Class Period was approximately 696,000 shares, with more than 171 million shares of stock outstanding as of September 30, 2018, and a market capitalization reaching almost $1.5 billion during the Class Period.

52.     As a result of the foregoing, the market for Ferroglobe's securities promptly digested current information regarding Ferroglobe from all publicly available sources and reflected such information in Ferroglobe's share price. Under these circumstances, all purchasers of Ferroglobe's securities during the Class Period suffered similar injury through their purchase of Ferroglobe's securities at artificially inflated prices and a presumption of reliance applies.

53.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is

not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## INAPPLICABILITY OF THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE

54. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

55. The statements alleged to be false and misleading herein relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

56. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Ferroglobe who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

57. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and

other members of the Class to purchase Ferroglobe's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

59.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ferroglobe's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ferroglobe's financial well-being and prospects, as specified herein.

61.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ferroglobe's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Ferroglobe and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

62.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their

responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

63.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Ferroglobe's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

64.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Ferroglobe's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Ferroglobe's securities during the Class Period at artificially high prices and were

damaged thereby.

65.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Ferroglobe was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Ferroglobe securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

66.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

68.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

69.     Individual Defendants acted as controlling persons of Ferroglobe within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements

to be corrected.

70.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

71.     As set forth above, Ferroglobe and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 17, 2019

**GLANCY PRONGAY & MURRAY LLP**

By:   *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Avenue, Suite 530
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

-and-

**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke
Leanne H. Solish
Natalie S. Pang
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160

*Attorneys for Lead Plaintiff Lance Treankler and the putative class*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On July 17, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 17, 2019.


*s/ Lesley F. Portnoy*
 Lesley F. Portnoy