USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 11/10/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE FERROGLOBE PLC SECURITIES
LITIGATION

Master File No. 1:19-cv-00629 (RA)

No. 1:19-cv-02368 (RA)

OPINION & ORDER

CLASS ACTION

RONNIE ABRAMS, United States District Judge:

Lead Plaintiff Lance Treankler ("Plaintiff") brings this class action suit against Ferroglobe
PLC ("Ferroglobe" or the "Company"), Pedro Larrea, and Phillip Murnane (collectively,
"Defendants"), alleging that Defendants committed securities fraud in violation of Sections 10(b)
and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission
("SEC") Rule 10(b)-5. Plaintiff alleges that, from September 4, 2018 until November 26, 2018,
Defendants made misleading statements about the health of Ferroglobe's silicon-metals business
in an effort to conceal the Company's disappointing financial results from that quarter.

On September 13, 2019, Ferroglobe moved to dismiss the first amended complaint
("Complaint") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Ferroglobe
principally contends that the Complaint fails to plead sufficient facts to demonstrate (1) that the
challenged statements were false or misleading when made, or (2) that any Defendant acted with
the requisite scienter. On May 5, 2020, Larrea and Murnane (collectively, the "Individual

Defendants"), moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(5), and 12(b)(6), and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.N.T.S. 163.   Adopting the arguments made by Ferroglobe in support of its motion to dismiss, the Individual Defendants, both of whom reside abroad, also argue that Plaintiff failed to comply with the rules for service of international defendants.

Because the Court concludes that the Complaint fails to adequately plead the elements of falsity and scienter, Defendants' motions to dismiss are granted in full.

## BACKGROUND

### I.   Factual Background

The facts alleged in the Complaint are assumed to be true for the purposes of this motion. *See, e.g., Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).   The Court also considers facts drawn from the two presentations incorporated into the Complaint by reference that contain the statements that Defendants allege were false or misleading.   *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).

### A.   The Parties

Defendant Ferroglobe, a materials innovation company headquartered in London, United Kingdom, produces silicon metal, silicon-based alloys, and manganese-based alloys for use as components in numerous industrial and consumer products, including aluminum and steel.   *See* Compl. ¶¶ 2, 14.   Defendant Pedro Larrea served as the Chief Executive Officer of Ferroglobe throughout the period of September 4, 2018 until November 26, 2018 (the alleged "Class Period"). *See id*. ¶ 14.   Defendant Phillip Murnane was the Company's Chief Financial Officer during the Class Period.   *See id*. ¶ 15.

Plaintiff Lance Treankler seeks to represent all persons and entities who purchased or otherwise acquired Ferroglobe securities during the Class Period, and who were damaged thereby. *See id*. ¶¶ 13, 39.

**B.     The Trade Case**

In March 2017, Ferroglobe, through its U.S. subsidiary Globe Specialty Metals, brought a case before the U.S. Department of Commerce ("DOC") and the U.S. International Trade Commission ("ITC") to address what the Company claimed to be unfairly dumped and subsidized silicon-metal imports from Australia, Brazil, Kazakhstan, and Norway (the "trade case"). *See id*. ¶ 18.   In April 2017, the ITC issued a preliminary determination that allowed the investigation into these allegations to continue.  *See id*. ¶ 18.  Ferroglobe announced in March 2018 that the DOC had issued "affirmative antidumping determinations" and would impose new duty rates on imports from the aforementioned countries pending a "final injury determination" from the ITC. *See id*.  Three weeks later, the ITC concluded that the U.S. silicon industry was not materially injured or threatened by such imports, and that no duties would be issued; the investigation subsequently terminated.  *See id*.  In May 2018, analysts predicted that the ITC's decision would result in lower U.S. silicon metal prices.  *See id*.

Ferroglobe nonetheless reported positive financial results for the first quarter of 2018, with management citing "favorable supply-demand supportive of pricing."  *See id*. ¶ 19.  On May 22, 2018, J.P. Morgan noted that "[s]ilicon metal prices [were] holding in better than expected so far." *See id*.

**C.     The September 2018 Presentations**

On September 4, 2018, the first day of the Class Period, the Individual Defendants presented a Ferroglobe "Business Update" at the Goldman Sachs Leveraged Finance Conference.

*See id*. ¶ 19; Declaration of Partha P. Chattoraj ("Chattaroj Declaration"), Ex. 2 ("Sept. 14 Presentation").  In that presentation, Defendant Larrea stated that "market fundamentals are accelerating the demand for our products," including silicon metals, as well as manganese-based and silicon-based alloys.  *See* Compl. ¶ 22.  The slide in question cited "[p]opulation growth" in China and India, "[u]rbanization" in India, Brazil, and other emerging markets, "[e]nergy [e]fficiency," and the growing demand for renewable energy as examples of "[g]lobal [m]egatrends [d]riving [i]ncreased [d]emand for Ferroglobe's [k]ey [p]roducts."  Sept. 14. Presentation at 6.

In that same presentation, Defendant Murnane stated that the Company's second-quarter results "confirms the strong performance of Ferroglobe in 2018", citing a positive quarterly trend in revenue contribution and in earnings before interest, taxes, depreciation, and amortization ("EBITDA").  *See* Compl. ¶ 23.  The slide, above the figures for EBITA from the first quarter of 2017 through the second quarter of 2018, depicted a rising arrow accompanied by the text "Q2 2018 +97% from Q2 2017."  *See id.*  Larrea and Murnane presented a "substantially similar" presentation deck at subsequent events on September 12, and 13, 2018, repeating the above-cited statements.  *See id.* ¶ 26.  All three presentations were subsequently posted on Ferroglobe's website.  *See id.* ¶¶ 25, 29.  On September 21, 2018, Ferroglobe's stock price closed at a Class Period high of $8.45 per share.  *See id.* ¶ 31.

### D.    The November 2018 Presentation

On November 14, 2018, Defendants gave a presentation at the CRU Silicon Metal Conference in Lisbon, Portugal.  Within a section entitled "[n]ear-term observations on the silicon metal market," the presentation stated that the "[t]rade case 'overhang' ha[d] passed," citing "corrections to supply, demand, and pricing."  *See id.* ¶ 32.  A subsequent slide entitled "Historical

context for the recent evolution in [Silicon Metal] prices" tracked pricing fluctuations in the United States, European Union, and China from October 2008 to October 2018. *See* Chattaroj Declaration, Ex. 5 ("Nov. 14 Presentation") at 12. That slide depicted a downward trajectory in silicon metal pricing from February 2018 through October 2018. *See id*. Adjacent to the chart, a box explained that the "[p]rice recovery in 2017" was "'amplified' due to [the] preliminary trade case outcome" and that the "'Overhang' impact of trade case" "le[d] to surplus inventories by customer in advance of final outcome." *See id*. The following slide proclaimed that "[g]lobal silicon supply significantly exceeded demand during Q2 and Q3" of 2018, and depicted a decline of 50,000 tons in global consumption of the metal in the third quarter of 2018, relative to the previous quarter. *See id*. at 13. Subsequent slides documented that index prices in the United States, Europe, and China were at or below their ten-year averages. *See id*. at 14-15. The presentation then stated that one of the "[c]atalysts for near-term pricing recovery" was the fact that the "[t]rade case impact has passed" and that there were "lower inventory stockpiles by end users." Compl. ¶ 32; *see* Nov. 14 Presentation at 16. Defendants indicated that CRU was "projecting a global balance deficit [of silicon metal] in early 2019" following the "surplus inventory overhang in 2018." *See* Nov. 14 Presentation at 17. An adjacent chart displayed a 95,000-ton global surplus of metal for the third quarter of 2018, but projected a deficit in the first quarter of 2019. *See id*.

Within the section on the "[m]edium term outlook for silicon metal," *see id*. at 20—following discussion of macroeconomic drivers for global silicon demand, *see id*. at 21, and global photovoltaic demand, *see id*. at 22—Defendants opined that "[a]luminum demand [was] expected to continue delivering steady growth for silicon metal," Compl. ¶ 33. That statement appeared as the header to a slide that demonstrated projections by "AME Metals & Mining" for year-on-year

growth in demand for finished aluminum in North America, Europe and China; the projections spanned into the year 2020. *See* Nov. 14 Presentation at 23. The November 14 presentation was later posted on Ferroglobe's website. Compl. ¶ 34.

      **E.**    **The November 2018 Disclosures**

      On November 26, 2018, fewer than two weeks after Defendants' representations at the CRU conference, Ferroglobe released its financial results for the third quarter of 2018, announcing a net loss of $2.9 million and adjusted EBITDA of $45.0 million, a 47.9% decrease from the previous quarter. *See* Compl. ¶ 36. The following day, in a conference call with analysts, Larrea stated that "[t]he third quarter results were disappointing as the business was challenged with the confluence of softer flat prices and lighter volumes." *See id.* ¶ 37. Larrea explained that "[t]he most significant driver of the Q3 results was reduced pricing, specifically average sales price for silicon metal declined 4.9% versus Q2 2018, while average sales price for silicon-based alloys and manganese-based alloys fell by 5.6% and 7.1%, respectively" and that "[t]he net impact of weaker volumes and pricing during the quarter yields a 9.6% decline in our top line revenue." *See id.* To explain the results, Larrea stated that "[t]he net impact of silicon production at high rates, the impact of customers stocking up in anticipation of the trade case and the availability of aluminum scrap are weighing on the pricing environment in North America," and that "the biggest factor contributing to the decline this quarter has been pricing." *See id.*

      Following this news, Ferroglobe's share price fell by more than 62%, closing at $1.80 per share on November 27, 2018. *See id.* ¶ 38.

**II.**    **Procedural Background**

      On January 22, 2019, Treankler, individually and on behalf of all others similarly situated, brought suit against Defendants for securities fraud. On March 15, 2019, Plaintiff Jam-Wood

Holdings, LLC, filed a class action complaint that alleged substantially similar violations of the securities laws.  *See* No. 19-cv-02368, Dkt. 1.  The Court consolidated the actions on May 2, 2019, appointing Treankler as the lead plaintiff.  *See* Dkt. 15.  On July 17, 2019, Plaintiff filed a first amended complaint alleging that Defendants' violated Sections 10(b) and 20(a) of the Securities Exchange Act by making optimistic statements about the Company's business, operations, and prospects without disclosing to investors the marked decline in pricing for its products.  *See* Compl. at 1-2.

On September 13, 2019, Ferroglobe moved to dismiss the Complaint for failure to state a claim.  On May 5, 2020, Larrea and Murnane moved to dismiss the Complaint on the same bases of as those raised by Ferroglobe, as well as improper service.  The Court held oral argument on these two motions on November 5, 2020.

## III.    Allegations in the Complaint

The Complaint alleges that four distinct categories of statements were false or materially misleading.

Plaintiff first contends that Defendant Larrea's statement of September 4, 2018—repeated on September 12 and 13, 2018—that "market fundamentals are accelerating the demand" for Ferroglobe's products was materially misleading because it led investors to believe that the fundamental market factors underlying the Company's growth during the first half of the fiscal year remained in place as of September 2018.  *See* Compl. ¶ 21.  Second, Murnane's statement on September 4, 2018—and repeated on September 12 and 13, 2018—that the Company's second-quarter performance "confirms the strong performance of Ferroglobe in 2018" accompanied by a rising arrow of adjusted EBITA misled investors to believe that that strong performance was continuing into the third quarter.  *See* Compl. ¶ 23.  According to Plaintiff, "by this point late in

the third quarter, Defendants knew or should have known" about Ferroglobe's later-revealed issues with supply, demand, and pricing.  *See* Compl. ¶ 25.  The optimism of Defendants' September 2018 statements thereby misled investors into believing that the Company's growth was continuing at that time.  *See* Compl. ¶ 21.

Third, Plaintiff contends that Defendants' November 14, 2018 statements that the trade case "overhang" and "impact" had "passed," which were accompanied by citations to "corrections" to supply, demand, and pricing, misled investors by failing to disclose the adverse effect of the trade case on Ferroglobe's third-quarter performance, as evidenced by significant declines in the pricing of, and demand for, silicon metals.  *See* Compl. ¶ 32.  Lastly, Plaintiff maintains that Defendants' representations in that presentation that "[a]luminum demand [was] expected to continue delivering steady growth for silicon metal" gave the false impression that growth in silicon-metal sales had been steady and continuing, when in fact Ferroglobe's growth in silicon-metal sales was negative in the third quarter of 2018.  *See* Compl. ¶ 33.  According to Plaintiff, "Defendants knew or should have known . . .  that pricing of the Company's products was declining during the third quarter . . .  that wide availability of aluminum scrap in North America was drawing down prices for Ferroglobe's products at that time," and that "the trade case . . .  would materially and negatively impact the Company's impending Q3 financial report." Compl. ¶ 35.

For the reasons that follow, the Court concludes that the Complaint fails to plausibly allege that any of the four statements cited above were false or materially misleading when made.  The Court further concludes that the Complaint does not plead sufficient facts to raise an inference of scienter.  Defendants' motions to dismiss the Complaint are therefore granted in full.  Because the

Court dismisses the Complaint on the basis that it fails to state a claim upon which relief can be granted, it does not reach the issue of improper service raised by the Individual Defendants.

## STANDARD OF REVIEW

### I.      Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12(b)(6), the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (internal quotation marks omitted). In answering this question, the Court must "'accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick*, 861 F.3d at 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (other internal quotation marks omitted)). The Court may also consider any "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied" in bringing this action. *ATSI Commc'ns*, 493 F.3d at 98.

### II.     Motions to Dismiss Under Federal Rule of Civil Procedure 9(b) and the PLSRA

This action for securities fraud is also subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b). *See, e.g.*, *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. J.P.*

*Morgan Chase Co*., 553 F.3d 187, 196 (2d Cir. 2009).  Under this standard, a plaintiff alleging fraud "must state with particularity the circumstances constituting" the alleged fraud.  Fed. R. Civ. P. 9(b).  The PSLRA expressly requires plaintiffs alleging securities fraud to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief ... all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  Under the PLSRA and Rule 9(b) pleading requirements, a plaintiff must explain with particularity "the basis for the plaintiff's belief that the omitted fact was known at the time of the statement."  *In re Mindbody, Inc. Sec. Litig*., No. 19-CV-8331 (VEC), 2020 WL 5751173, at *7 (S.D.N.Y. Sept. 25, 2020).  The PLSRA further requires that securities-fraud complaints "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u–4(b)(2)).  "Allegations that are conclusory or unsupported by factual assertions are insufficient."  *ATSI Commc'ns*, 493 F.3d at 99.

## DISCUSSION

### I. Whether Defendants Violated Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5

Under Section 10(b) of the Securities Exchange Act, it is

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

Rule 10b-5, promulgated by the SEC under Section 10(b) to define 'manipulative and deceptive devices,' prohibits persons from "(1) making 'any untrue statement of a material fact'

and (2) from 'omit[ting] to state a material fact necessary in order to make [ ] statements made, in the light of the circumstances under which they were made, not misleading' in connection with the purchase or sale of any security." *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 174 (2d Cir. 2020) (quoting 17 C.F.R. § 240.10b-5(b)). While "the first part of this language unambiguously renders untrue statements of fact actionable," "the second part of this language, which does not cabin 'statements' with the modifier 'of a material fact,' renders both statements of fact and those of opinion actionable when such statements would be misleading without the contextualization of material facts." *Id*.

To maintain a private damages action under Section 10(b) and Rule 10b-5, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008). Defendants' motion challenges only the first two factors. The Court addresses each in turn.

### A. Whether Plaintiff Adequately Alleges that Defendants' Statements Were False or Misleading

Plaintiff alleges that Defendants' statements about Ferroglobe's prospects in the silicon-metal market constitute material misrepresentations or omissions. To support a finding of liability, "Rule 10b-5 expressly requires an actual *statement*, one that is either 'untrue' outright or 'misleading' by virtue of what it omits to state." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239 (2d Cir. 2016) (emphasis in original). Plaintiff concedes that none of the statements were literally false, but rather "misleading for their ***omission*** of material facts." Pl. Mot. at 16 (emphasis in original). In other words, the Complaint does not allege that any of the relevant statements were outright false.

11

"The law is well settled . . . that so-called 'half-truths'—literally true statements that create a materially misleading impression—will support claims for securities fraud." *S.E.C. v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011), rev'd on other grounds, *Gabelli v. S.E.C.*, 568 U.S. 442 (2013). Thus, establishing the "literal truth of an isolated statement is insufficient" grounds for dismissal of a complaint for securities fraud; "the proper inquiry requires an examination of defendants' representations, taken together and in context." *Meyer v. Jinkosolar Holdings Co.,* 761 F.3d 245, 250–51 (2d Cir. 2014) (internal quotation marks omitted).  When a defendant makes a disclosure about a particular topic, "the representation must be complete and accurate." *Id*.  In determining whether an omission makes a statement misleading, the Supreme Court has directed courts to examine the statement, whether of fact or opinion, "in light of all its surrounding text," "in its full context," and from the perspective of a "reasonable investor." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015).

Plaintiffs are not permitted, however, to proceed with allegations of 'fraud by hindsight,' in which statements are proven false on the basis of subsequent information.  As "corporate officials are only responsible for revealing those material facts reasonably available to them . . . ., allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim for securities fraud." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).

Within this framework, a plaintiff may adequately plead falsity by 'half-truth' with specific allegations that the defendant possessed information (1) at the time the challenged statement was made, (2) that concerned the topic referenced in that statement, and (3) that contradicted representations in that statement.  The Court of Appeals for the Second Circuit, for example, has held falsity to be adequately pleaded where plaintiffs alleged that a company issued to regulators

12

a report of pollution problems which "permitted the inference" that such problems were present, substantial, and known at the time of defendant's earlier statements touting the company's pollution abatement efforts. *See Meyer,* 761 F.3d at 251. Numerous courts within this Circuit have thus found dismissal inappropriate where plaintiffs have alleged specific facts that support the inference that defendants were contemporaneously aware of contradictory information. *See Novak*, 216 F.3d at 304 (citing allegation that internal company documents that were "distributed at regular Monday morning merchandise meetings in which the [] defendants participated," contradicted representations made in defendant's public financial statements); *In re Global Brokerage, Inc.*, No. 17-cv-00916-RA, 2019 WL 1428395, at *9 (S.D.N.Y. Mar. 28, 2019) (referring to defendants' statements concealing trading relationship with offshoot company that created conflict of interest with defendant's customers); *McKenna v. Smart Techs. Inc.*, No. 11 CIV. 7673 KBF, 2012 WL 1131935, at *2-*3 (S.D.N.Y. Apr. 3, 2012) (citing allegations from four confidential witnesses that company knew that demand was falling out despite company representations to the contrary); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 180 (S.D.N.Y. 2010) (pointing to allegations that defendant officer "confidentially" admitted to employees that company was experiencing losses, whilst defendants made opposite representations to the public).

### 1.  The September 2018 Statements

Defendants contend that Plaintiff's allegations regarding the September 2018 statements do not make out a claim for securities fraud because the Complaint fails to plausibly allege that any of those statements were either false, not genuinely held, or contradicted by facts contemporaneously known to the Defendants at the time of the presentation. The Court agrees.

As a threshold matter, the Complaint does not allege facts sufficient to plead the objective falsity of either of the challenged statements from the September 2018 presentation.  Plaintiff does not contend that broad "market fundamentals" cited by Defendants, namely urbanization, population growth and the increasing demand for alternative energy in emerging markets, were *not* accelerating demand for Ferroglobe's key products as of September 2018.  Likewise, Plaintiff does not dispute the facial accuracy of Murnane's statement that Ferroglobe's second-quarter performance "confirm[ed]" the Company's "strong performance" in 2018, nor the veracity of the revenue and earnings figures cited on that slide.  That slide discussed the historical performance of the company from 2017 to the second quarter of 2018, without any reference to the third quarter or any future projection of revenue.  Plaintiff does not allege that these representations of past performance were contradicted, let alone proven to be false, by the third-quarter figures that were subsequently disclosed.

The Court further concludes that the Complaint does not plausibly allege that the omission of issues underlying the Company's third-quarter performance would render those representations misleading to a reasonable investor.  Plaintiff maintains that the description of the market fundamentals underlying the Company's growth, while facially accurate, misled investors to believe "that the growth experienced in the first half of 2018 was continuing at that time late in the third quarter of 2018."  Compl. ¶ 21.  Viewing defendants' representations "together and in context," *see Meyer*, 761 F.3d at 531, "in light of the circumstances under which they were made," 17 C.F.R. § 240.10b-5(b), the Court finds such an inference unreasonable.

The September 2018 presentation made no reference, implicit or explicit, to Ferroglobe's performance in the third quarter of 2018.  The first challenged statement did not even purport to characterize Ferroglobe's own financial performance.  That representation about increasing

demand for the products produced by Ferroglobe appeared on a slide that discussed "[g]lobal [m]egatrends" and the implications of such trends for the silicon-metal industry as a whole, over an indeterminate time horizon.  *See* Sept. 14 Presentation at 8.  Because the Complaint is devoid of allegations that the cited trends do not in fact increase demand over time for Ferroglobe's products, the Court fails to see how the omission of the third-quarter pricing declines would render that statement misleading to a reasonable investor.  Although companies have a duty to be "complete and accurate" when they make representations about "particular topic[s]," the duty extends only to representations that are germane to that particular topic.  *See, e.g., Meyer*, 761 F.3d at 531 (holding that discussion about pollution-abatement efforts that "gave comfort to investors that reasonably effective steps were being taken to comply with applicable environmental regulations" triggered requirement to disclose known "substantial violations of [those] regulations").  In this case, Ferroglobe's statements about macro-trends within its industry did not require an accompanying disclosure about the ancillary issues of pricing issues from that quarter.  Nor did the mere mention of the concept of demand trigger a duty to disclose the Company's current financial health.  *See Richman v. Goldman Sachs Grp., Inc.,* 868 F. Supp. 2d 261, 274 (S.D.N.Y. 2012) ("[R]evealing one fact about a subject does not trigger a duty to reveal all facts on the subject, so long as 'what was revealed would not be so incomplete as to mislead.'" (quoting *In re Bristol Myers,* 586 F.Supp.2d 148, 160 (S.D.N.Y. 2008)).  Plaintiff's theory of liability defines its subject at a level of generality that would require companies to disclose the current state of their financial health every time they discuss industry trends.  The Court finds such a theory untenable.

Plaintiff's allegations regarding the second September 2018 statement fare no better.  According to Plaintiff, that statement was false because the rising arrow above the quarterly figures

for revenue and adjusted EBITDA "misle[d] investors to believe that the Company's supposedly 'strong performance' was continuing in the third quarter."  Compl. ¶ 21.  Defendants challenge the reading of the arrow as indicating an EBITDA increase into the third quarter.  The Court agrees, and concludes that Plaintiff's allegation hinges on an unreasonable interpretation of the slide.  As indicated by the legend that accompanied the arrow, which read "Q2 2018 + 97% from Q2 2017", the arrow in question referred to a one-year comparison between the second quarter of 2017 and the second quarter of 2018.  The slide purported to discuss Ferroglobe's performance as a historical matter.  In that context, the Court cannot credit as plausible the contention that omitting a known deviation from this trend rendered the slide misleading.  A representation of historical performance need not disclose future or present performance in order to be complete and accurate regarding its purported topic.  The Court fails to see how discussion of a company's historical success would mislead a reasonable investor into any particular belief about that company's present or future performance.  Again, Plaintiff's theory of falsity defines 'topic' at an untenable level of abstraction that would require companies to include disclosures about their current financial health in every discussion of historical performance, in order to avoid liability for securities fraud.   The Court rejects that interpretation and concludes that Defendants need not have included such ancillary information in order to make their historical representations complete and accurate.

Lastly, even if the Court were to accept that the September 2018 statements would mislead a reasonable investor, it would nonetheless still conclude that the Complaint does not adequately plead falsity because Plaintiff fails to plausibly allege that Defendants were aware of facts that contradicted those statements at the time they were made.  Plaintiff's conclusory allegations that Defendants "knew or should have known" of pricing declines in the third quarter are unsupported by factual assertions, and thus fail to meet the standards that this Circuit has outlined for pleading

falsity.  *See ATSI Commc'ns*, 493 F.3d at 99.  The Complaint does not identify any specific facts that were known to the Defendants and contradicted their public statements.  Nor does it allege how or when Defendants became aware of this hypothetical information.  *Cf. McKenna*, 2012 WL 1131935, at *2-*3 (citing allegations from four confidential witnesses that defendants knew of specific facts that they failed to disclose in offering documents); *Freudenberg*, 712 F. Supp. 2d at 180 (referring to allegations that defendants admitted to company employees that company was experiencing losses but made opposite representations to the public).

In sum, the representations made by Defendants did not broach, nor allude to, the topic of Ferroglobe's present or future performance, let alone the Company's third quarter results.   Failure to disclose the later-revealed issues with pricing, supply, and demand from that quarter did not render the September 2018 statements misleading.   Nor would earlier disclosure of the declining average sales prices for silicon metal relative to the second quarter or the challenges presented by "the confluence of softer flat prices and lighter volumes," *see* Compl. ¶ 37, have made Ferroglobe's September statements any more complete or accurate.  Defendants' discussion of market trends and historical performance did not trigger a requirement to disclose matters that were, at best, tangentially related to the topics discussed.  In contrast to the above-cited cases, the allegedly material facts that Defendants omitted here did not contradict their public statements, explicitly or implicitly.  Nor does the Complaint allege that Defendants were in possession of any specific contrary facts that would render their statements misleading.

The Court thus concludes that Plaintiff has failed to plead sufficient facts to state a plausible claim that the September statements were false or misleading when made.

###### 2.   The November 2018 Statements

With respect to the November 2018 presentation, Plaintiff alleges that the claims that the "impact" or "overhang" of the ITC trade case had passed were false or misleading because the trade case had, in fact, adversely effected Ferroglobe's third-quarter financial results.  Plaintiff cites the November 27, 2018 earnings call—in which Defendants attributed the disappointing results to "reduced pricing," and explained that "the impact of customers stocking up in anticipation of the trade case and the availability of aluminum scrap [was] weighing on the pricing environment in North America," Compl. ¶ 37—as evidence of falsity.  In response, Defendants counter that the claims about the trade case were not misleading when viewed in context of the presentation, and that the Complaint fails to plead specific facts showing that the statements were false when made.

Viewing the November 2018 statements "in light of all [their] surrounding text," *Omnicare*, 575 U.S. at 190, the Court concludes that the Complaint fails to adequately plead their falsity.  The presentation in which the challenged statements appeared, particularly the slides that immediately preceded and followed those statements, belies any allegation that Defendants concealed negative pricing trends from investors.  The November 2018 presentation not only repeatedly disclosed the falling global price for silicon metal, but also expressly acknowledged the negative impact of the trade case on those prices.

The relevant section of the presentation, which discussed near-term observations on the silicon-metal market, disclosed steep declines in the price of silicon metal from February 2018 to October 2018.  *See* Nov. 14 Presentation at 12.  In other words, the presentation explicitly disclosed the pricing decline from the third quarter of 2018.  In an apparent attempt to explain that decline, Defendants opined that the "overhang" impact of the trade case had led to inventory surplus, *see*

*id.*, and that "[g]lobal silicon supply significantly exceeded demand during Q2 and *Q3* . . . ," *id.* at 13 (emphasis added). A red box highlighted the declining figures for global consumption of silicon metal from the third quarter. *See id.* The two subsequent slides demonstrated the extent to which prices had fallen in the United States, China, and Europe during that quarter. *See id.* at 14-15. The statement that the "[t]rade case impact has passed" appeared in a slide entitled "[c]atalysts for near-term pricing *recovery*." *Id.* at 16 (emphasis added). In that context, no reasonable investor would conclude that the statements regarding the passage of the trade case 'overhang' applied to the third quarter of 2018. Those statements, which followed a lengthy discussion of contemporaneous price declines, were expressly directed to the future, beyond the third quarter. The slide that followed that statement proclaimed that "CRU is projecting a global balance deficit *in early 2019*" that would follow the "*surplus inventory overhang in 2018*." Nov. 14 Presentation at 17 (emphases added).

Defendants' acknowledgment of the challenges facing the silicon market in 2018 and the subsequent need for a pricing "recovery" discredits any allegations of falsity. Indeed, the presentation disclosed the very information that Plaintiff alleges was omitted, namely the precipitous decline in silicon metal pricing, and the negative impact of the trade case. *See Olkey v. Hyperion 1999 Term Trust, Inc.,* 98 F.3d 2, 5 (2d Cir. 1996) (finding failure to state a claim where challenged representations "warn[ed] investors of exactly the risk the plaintiffs claim was not disclosed"). Under these circumstances, the Court cannot infer that a reasonable investor would interpret the trade-case statements as an assurance that Ferroglobe's 2018 growth was continuing into the third quarter.

The Court finds that the falsity allegations with respect to Defendant's November 2018 statements about aluminum demand suffer from similar failings. Plaintiff contends that the

Defendants' expressed "expect[ation]" that demand for aluminum would "continue delivering steady growth for silicon metal," Compl. ¶ 33, gave the misleading impression that growth in silicon-metal sales was steady and continuing as of November 2018.  According to Plaintiff, the subsequent disclosure of declining prices and the partial attribution of that decline to the "availability of aluminum scrap" in North America, *see id*. at ¶ 37, establish the falsity of that statement.  In light of the context in which the initial statement was given, the Court cannot credit Plaintiff's contention that a reasonable investor would glean from it a misleading impression about Ferroglobe's third-quarter performance.  The allegations of falsity are therefore insufficient.

Defendants made the above statement in the midst of a discussion of the "*medium-term outlook for silicon metal*," which forecasted global demand for silicon-based products into 2023.  *See* Nov. 14 Presentation at 20-24 (emphasis added).  That statement appeared as the heading to a slide that charted third-party estimates of global aluminum demand for 2018-2020 and compared such demand to figures from 2017.  *See id.* at 23.  The slide estimated that North American aluminum demand would fall by 0.5% in 2018.  *Id.*  Below the charts, the presentation explained that Chinese aluminum exports "ha[d] increased substantially in 2018" despite the imposition of tariffs and duties.  *Id.*  The slide thus made no mention of Ferroglobe's financial performance.  Pricing is similarly absent from the slide.  The representations concerned only demand for aluminum.  A discussion of third-party estimates of global demand for a product over a four-year time horizon would not mislead any reasonable investor about Ferroglobe's quarterly sales figures.  As described above in the context of the September 2018 statements, Ferroglobe's third-quarter performance is a separate issue from estimates of worldwide aluminum demand through 2020.  The omission of facts about the former subject could not plausibly mislead a reasonable investor about the latter.

In sum, the Court concludes that statements that touted Ferroglobe's strong past performance and painted an optimistic view of future prospects based on market fundamentals do not become misleading merely because the Company was having a down quarter at the time the statements were made.

### B.  Whether Plaintiff Adequately Pleaded Scienter

To state a claim under Section 10(b), Plaintiff must also adequately allege that each Defendant acted with scienter when making the false or misleading representations.  "[P]laintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Novak*, 216 F.3d at 315 (internal quotation marks omitted).  Where the defendant is a corporation like Ferroglobe, a plaintiff must allege "that an agent of the corporation committed a culpable act with the requisite scienter, and that the act (and accompanying mental state) are attributable to" the entity.  *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (citation omitted).  A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 324 (2007).

In the securities fraud context, "the scienter requirement is met where the complaint alleges facts showing either: 1) a motive and opportunity to commit the fraud; or 2) strong circumstantial evidence of conscious misbehavior or recklessness."  *Emps. Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015) (internal quotation marks omitted).  To adequately plead motive and opportunity, plaintiff must allege that the defendant "benefitted in some concrete and personal way from the purported fraud."  *Novak*, 216 F.3d at 307-08.  "Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and

the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *ECA, Local 134 IBEW Joint Pension Tr.*, 553 F.3d at 198.

Absent a showing of motive, "'the strength of the [plaintiff's] circumstantial allegations must be correspondingly greater.'" *Id*. at 199 (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).   An inference of conscious misbehavior or recklessness arises where the complaint sufficiently alleges that the defendants "knew facts or had access to information suggesting that their public statements were not accurate" or "failed to check information they had a duty to monitor." *Novak*, 216 F.3d at 311.   The evidence must create the inference that "defendants engaged in conscious misstatements with the intent to deceive." *Id.* at 312.

Plaintiff's threadbare allegations of scienter do not meet this standard.   The Complaint is devoid of any allegations that the Individual Defendants acted with any motive, whether pecuniary or otherwise, to deceive the investing public.   It alleges only, in conclusory fashion, that "Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading." Compl. ¶ 46.   Plaintiff does not specify what information Defendants possessed, nor how or when they received such information.   The Complaint instead broadly states that Defendants "knew or should have known" that pricing and demand for Ferroglobe's products had materially declined in the third quarter, *see* Compl. ¶¶ 25, 30, 35, and that Defendants' "associations with the Company . . . made them privy to confidential proprietary information concerning Ferroglobe," *id*. ¶ 47. Plaintiff's opposition to the motion to dismiss likewise maintains that "[t]he most plausible *inference* from [the alleged] facts is that Defendants *already knew* at the time of the positive September presentations" about the third quarter trends, and that it is "highly implausible that the pricing decreases that led to the disastrous Q3 2018 results were unknown to senior management"

at the time.  Pl. Mot. at 14 (emphases added).  Nowhere does Plaintiff allege that Defendants had access to reports or statements containing the claimed true facts regarding Ferroglobe's third-quarter performance.

The Court accordingly concludes that Plaintiff has not alleged sufficient facts to raise a strong inference of scienter.  "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak*, 216 F.3d at 309; *see also Teamsters Local 445 Freight Div. Pension Fund*, 531 F.3d at 196 (concluding that "broad reference" to defendants' access "to raw data" absent "allegation that these data had been collected into reports" failed to "raise[] an inference of scienter based on knowledge of or access to information demonstrating the inaccuracy of [defendants'] public statements"). Accordingly, courts within the Second Circuit have dismissed claims of securities fraud where, as here, plaintiffs failed to allege with particularity that defendants had access to information that suggested the inaccuracy of their public statements. *See, e.g, Schwab v. E*Trade Fin. Corp.*, 285 F. Supp. 3d 745, 757 (S.D.N.Y.), *aff'd*, 752 F. App'x 56 (2d Cir. 2018) ("[B]oilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter."); *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 623 (S.D.N.Y. 2017); *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011) (holding that "assertions that certain information was the 'sort of measurement' or 'would have been' reviewed by the Individual Defendants are too speculative to give rise to a strong inference of scienter").

Under this framework, the Court finds too speculative the general allegation that the Individual Defendants, by virtue of their position as Chief Executive Officer and Chief Financial

Officer, respectively, must have known the true facts of Ferroglobe's financial performance at the time of the September and November presentations.   So too are the allegations regarding the temporal proximity between the presentations and the November 27, 2018 "corrective disclosures."   More specific allegations are required to support a claim of scienter.   Plaintiff's failure to adequately plead scienter provides an alternate basis for dismissal of the Complaint.

## II.     Whether Defendants Violated Section 20(a) of the Securities Exchange Act

Plaintiff further alleges that the individual Defendants should be held separately liable as "control persons" under Section 20(a) of the Exchange Act.

Section 20(a) of the Exchange Act provides that

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable ..., unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

Liability under Section 20(a) is derivative.   "In order to establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person and control of the primary violator by the targeted defendant, and show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person." *S.E.C. v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472 (2d Cir. 1996) (internal quotation marks, brackets, and citations omitted); *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011).

Because Plaintiff has failed to make a prima facie case of a "primary violation" under Section 10(b), he has not sufficiently pleaded that Defendants violated Section 20(a).   Accordingly, those claims are dismissed.

**III.     Whether Plaintiff Should Be Granted Leave to Amend**

Plaintiff requests leave to amend the Complaint in the event the Court dismisses the action for failure to state a claim.  *See* Dkt 55 at 15 n.5.  Pursuant to Fed. R. Civ. P. 5(a)(2), a court should freely grant leave to amend "when justice so requires."  However, "[l]eave to amend may properly be denied if the amendment would be futile."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).   In this case, the Court concludes that amendment to the Complaint would be futile.  Plaintiff informed the Court at oral argument that any future amendment would involve the allegation of additional facts, based on further investigation.  While the Court could conceive of adding factual allegations sufficient to plead scienter, there is no set of additional facts that Plaintiff could allege in support of his claim that the four categories of statements were false within the meaning of the securities laws.  When assessed "in light of the circumstances under which they were made," 17 C.F.R. § 240.10b-5(b), those statements were not misleading to a reasonable investor.  No additional factual allegations could alter that conclusion.  Leave to amend is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's first amended complaint are GRANTED with prejudice.   The Clerk of Court is respectfully directed to terminate items 38 and 52 on the docket and close this case.


SO ORDERED.

Dated:     November 10, 2020
           New York, New York

_____
Ronnie Abrams
United States District Judge

25